UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RALPH RODRIGUEZ,

                Plaintiff,

      -against-

EDWARD BURNETT, et al.,

                Defendants.

**OPINION & ORDER**

22-CV-02198 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Ralph Rodriguez ("Plaintiff"), currently incarcerated at Fishkill Correctional Facility ("Fishkill"), brings this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983, predicated upon violations of the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 794. (Doc. 2, "Compl."). He asserts that during his confinement at Fishkill, the following defendants violated his rights: (1) State of New York; (2) Edward R. Burnett, Superintendent ("Burnett"); (3) Akinola Franci Akinyombo, Deputy Superintendent ("Akinyombo"); (4) Davachi M. Sullivan, Nurse Practitioner ("Sullivan"); (5) Sally A. Reams, Supervisor of Inmate Grievance Program ("Reams"); (6) John F. Woods, Deputy Superintendent of Program ("Woods"); (7) Alexandra Ayana Gibbons, Correctional Officer ("Gibbons"); (8) Luis Gonzalez, Assistant Deputy Superintendent ("Gonzalez"); (9) Stephen Urbanski, Deputy Superintendent of Security ("Urbanski"); (10) Sharon L. Frost, Deputy Superintendent of Administration ("Frost"); and (11) Charmaine Waylon, Nurse Administrator ("Waylon" and collectively, "Defendants").

Plaintiff presses essentially seven claims for relief: (i) denial of access to grievance procedures asserted against Reams; (ii) failure to provide a reasonable accommodation and

deliberate indifference to medical needs with respect to Plaintiff's mattress asserted against Sullivan; (iii) excessive force asserted against Gibbons; (iv) discrimination based on disability asserted against State of New York; (v) unconstitutional conditions of confinement asserted against unidentified Defendants; (vi) denial of access to courts asserted against unidentified Defendants; and (vii) deliberate indifference to a serious medical need with respect to Plaintiff's medication and physical therapy asserted against Sullivan. (*See generally* Compl.).

Pending before the Court is Defendants' motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Doc. 28). Pursuant to the briefing schedule set by the Court, Defendants filed their memorandum of law in support of their motion to dismiss on September 12, 2022 (Doc. 29, "Mot."). Plaintiff filed his memorandum of law in opposition on September 22, 2022, but requested to re-submit his opposition on September 29, 2022. (Doc. 31; Doc. 32; Doc. 33, "Opp."). The Court granted Plaintiff's application to resubmit his opposition and now considers Plaintiff's additional submissions (Docs. 31-33) as part of his opposition. Defendants filed their reply on October 26, 2022. (Doc. 35, "Reply").

For the reasons set forth below, Defendants' motion to dismiss is GRANTED as to claims one, two (reasonable accommodation regarding mattress), five, six, and seven (deliberate indifference regarding physical therapy) and DENIED as to claims two (deliberate indifference regarding mattress), three, four, and seven (deliberate indifference regarding physical therapy).

## BACKGROUND

Plaintiff alleges he became disabled in 2010 when he was stabbed multiple times and experienced severe injuries to his abdomen, wrist, and arm. (Compl. at 4). These injuries cause, among other things, chronic pain to his shoulder, back, neck, spine, and legs, and limit him in several major life activities. (*Id.*). Plaintiff was transferred to Fishkill in or around the end of 2019 and asserts that Fishkill administrators were made aware of his disability. (*Id.* at 6). He

further alleges that correctional officers and medical staff at Fishkill have access to his medical records which identify his disability. (*Id*. at 5). One such record from Plaintiff's previous correctional facility states that Plaintiff "may not be able to stand for prolonged periods" and "these limitations are permanent." (Opp. at 33, Ex. E).

While incarcerated at Fishkill, Plaintiff was seen by medical staff on multiple occasions and primarily by Sullivan. (Opp. at 36; Compl. at 11, 13). Despite Plaintiff's requests to be put on the pain medication he was previously prescribed, Gabapentin, Sullivan prescribed him Meloxicam. (Compl. at 13). Plaintiff alleges that Meloxicam was insufficient to deal with his pain and that a pain management doctor prescribed him a stronger pain medication. (Compl. at 13-14, 57). However, Sullivan refused to alter Plaintiff's prescription. (*Id*. at 13-14, 27). Additionally, Plaintiff alleges he did not receive physical therapy. (*Id*. at 27). Plaintiff requested that Fishkill provide him a reasonable accommodation by way of an egg crate mattress and/or extra mattress. (*Id*. at 12, 123). Records from Plaintiff's previous correctional facility show that he had a medical need for an egg crate mattress. (*Id*. at 120-121, Ex. F). Regardless, Sullivan denied each of Plaintiff's requests on the basis that an extra mattress or egg crate mattress was unnecessary. (*Id*. at 123, Ex. G). Also while at Fishkill, Plaintiff alleges that he was denied access to educational programs for which he was otherwise qualified. (*Id*. at 19). He claims that the administration explicitly rejected him from these programs because of his disability. (*Id*.).

Plaintiff alleges that on December 31, 2021, while he was recovering from an unrelated assault by correctional officers not party to this suit, he was laid up in bed with ankle and wrist injuries and using an extra mattress to elevate his leg when Gibbons approached him. (*Id*. at 16). Gibbons ordered Plaintiff, against his protest, to stand facing the wall for approximately twenty minutes while she searched his cubicle and removed his extra mattress. (*Id*. at 16-17). Gibbons

indicated she was doing this because of the altercation that had happened the day before and allegedly threatened to hurt Plaintiff if he did not comply. This extended period of standing caused Plaintiff to fall "hitting my head, and injuring my head, neck, back, wrist, and ankle." (*Id*.). Gibbons called medical and Plaintiff was taken away in a wheelchair (*Id*.). Plaintiff claims that Gibbons only targeted him because he had been making claims of filing suit against her co-workers involved in the prior assault. (*Id*.).

## STANDARD OF REVIEW

I.     Rule 12(b)(1) Standard

"Federal courts are courts of limited jurisdiction, and Rule 12(b)(1) requires dismissal of an action when the district court lacks the statutory or constitutional power to adjudicate it." *Schwartz v. Hitrons Sols., Inc.*, 397 F. Supp. 3d 357, 364 (S.D.N.Y. 2019).[1] "Where, as here, the defendant moves for dismissal under Rule 12(b)(1), as well as on other grounds, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined." *Saint-Amour v. Richmond Org., Inc.*, 388 F. Supp. 3d 277, 286 (S.D.N.Y. 2019) (quoting *United States v. New York City Dep't of Hous., Pres. & Dev.*, No. 09-CV-06547, 2012 WL 4017338, at *3 (S.D.N.Y. Sept. 10, 2012)).

II.     Rule 12(b)(6) Standard

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[1] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The presumption of truth, however, "is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 72. A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

A complaint submitted by a *pro se* plaintiff, "however inartfully ple[d], must be held to less stringent standards than formal pleadings drafted by lawyers . . . ." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (internal quotation marks omitted). Because *pro se* plaintiffs "'are often unfamiliar with the formalities of pleading requirements,' courts must 'apply a more flexible standard in determining the sufficiency of a *pro se* [complaint] than they would in reviewing a pleading submitted by counsel.'" *Smith v. U.S. Dep't of Just.*, 218 F. Supp. 2d 357, 361 (W.D.N.Y. 2002) (quoting *Platsky v. Cent. Intell. Agency*, 953 F.2d 26, 28 (2d Cir. 1991)). However, while "[p]ro se complaints are held to less stringent standards than those drafted by

lawyers, even following *Twombly* and *Iqbal*," dismissal is "appropriate where a plaintiff has clearly failed to meet minimum pleading requirements." *Thomas v. Westchester Cty.*, No. 12-CV-06718, 2013 WL 3357171, at *2 (S.D.N.Y. July 3, 2013) (internal citations omitted); *see also Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) ("Even in a *pro se* case . . . although a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted)). Therefore, while the Court must "draw the most favorable inferences that [a plaintiff's] complaint supports, [it] cannot invent factual allegations that [a plaintiff] has not pled." *Chappius*, 618 F.3d at 170. The Court does, however, have a duty to interpret "the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)).

### III.   Documents Considered

Plaintiff, in his opposition, submitted the following extraneous items on the extant motion: (1) Notice of Decision from the Social Security Administration (Opp. at 8-22); (2) a mailing receipt (*id.* at Ex. A); (3) Affidavits of other inmates regarding the Inmate Grievance System ("IGS") at Fishkill Correctional Facility (*id.* at Ex. B); (4) various letters between Plaintiff and IGP (*id.* at Ex. C); (5) Plaintiff's health records from Five Points Medical Department (*id.* at Exs. D & E)[2]; (6) opinion and order from a separate action Plaintiff filed against the City of New York, 15-CV-07945 (*id.* at Ex. D); and (7) Grievances Plaintiff filed

---

[2] The Court notes that the record from Five Points Medical Department appended to the Opposition as Exhibit D is a copy of the medical record attached to Plaintiff's Complaint as Exhibit F. Therefore, Exhibit D to the Opposition is not an extraneous document and is considered as part of the Complaint.

against Gibbons after commencement of this lawsuit (*id.* at Ex. F) (collectively the "Extraneous Documents").

The Court, in deciding a Rule 12(b)(1) motion, "may refer to evidence outside the pleadings." *Makarova*, 201 F.3d at 113. Indeed, on such a motion, the Court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue," along with "matters of which judicial notice may be taken." *Malloy v. Pompeo*, No. 18-CV-04756, 2020 WL 5603793, at *8 (S.D.N.Y. Sept. 18, 2020) (internal quotation marks omitted).

In deciding a Rule 12(b)(6) motion, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, documents 'integral' to the complaint and relied upon in it, and facts of which judicial notice may properly be taken under Rule 201 of the Federal Rules of Evidence." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *Manley v. Utzinger*, No. 10-CV-02210, 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider . . . documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which plaintiff relied in bringing the suit."). Still, even if a document is not incorporated into the complaint by reference, the Court may consider it "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)); *see also Schafer v. Direct Energy Servs., LLC*, 845 F. App'x 81, 82 (2d Cir. 2021) ("Where an extrinsic document is not incorporated by reference, the district court may nevertheless consider it if the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." (internal quotation marks omitted)).

The Court considers Plaintiff's Notice of Decision from the Social Security Administration and his health records from Five Points Medical Department (*id*. at 8-22, Exs. D & E), as they are integral to assessing Plaintiff's claimed injuries from excessive force and deliberate indifference, as well as his claims for relief under the ADA and Rehab Act. These documents are relied on by Plaintiff in alleging that he has a disability and medical need for an egg crate mattress. The Court also takes judicial notice of the opinion and order from Plaintiff's lawsuit against the City of New York in the Southern District of New York, No. 15-CV-07945. (*Id*. at Ex. D).  The Court declines to consider the remaining Extraneous Documents because they are not integral to the Complaint and do not form the basis of Plaintiff's claims at issue on this motion. Nor does the Complaint herein rely on the remaining Extraneous Documents Plaintiff appends or are facts of which the Court may take judicial notice. Simply put they are not helpful to the Court's 12(b)(1) or 12(b)(6) analysis.

## **ANALYSIS**

I.    First Claim for Relief: Denial of Access to Grievance Procedures

Plaintiff asserts in his first claim for relief denial of access to grievance procedures against Reams.[3] He alleges that Fishkill's inmate grievance program is "non exist[ent] and inadequate" and that "Reams had abused her authority, and due to her actions . . . rendered plaintiffs right to petition grievances, and exhaust administrative remedies unavailable . . ." (Compl. at 8-10). However, denial of access to grievance procedures is not a viable claim. *Johnson v. Wala*, No. 14-CV-01151, 2015 WL 4542344, at *4 (N.D.N.Y. July 27, 2015)

---

[3] With respect to the first claim for relief, Plaintiff asserts in opposition that this claim is for "supervisory liability" and not for improper handling of grievances. (Opp. at 25). Plaintiff apparently intended to "provide information" as to Defendants' personal involvement in the alleged constitutional violations. (*Id*.). Therefore, the Court considers the factual allegations underlying the first claim in evaluating Plaintiff's theory of supervisory liability *infra* and otherwise construes the first claim for relief as denial of access to grievance procedures.

("[I]nmate grievance programs created by state law are not required by the Constitution and [as] a consequence[ ] allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim." (alterations in original)); *Corley v. City of New York*, No. 14-CV-03202, 2015 WL 5729985, at *9 (S.D.N.Y. Sept. 30, 2015) ("The First Amendment is not implicated, however, where prison officials deny an inmate access to grievance procedures." (quoting *Mimms v. Carr*, No. 09-CV-05740, 2011 WL 2360059, at *10 (E.D.N.Y. June 9, 2011), *aff'd*, 548 F. App'x 29 (2d Cir. 2013))).

Accordingly, Plaintiff's first claim for denial of access to grievance procedures against Reams is dismissed.

II.   Second Claim for Relief: Failure to Provide a Reasonable Accommodation and Deliberate Indifference to a Serious Medical Need With Respect to Plaintiff's Mattress

Plaintiff's second claim for relief amounts to two separate claims for relief with respect to Plaintiff's mattress. First, Plaintiff alleges that Sullivan denied him a reasonable accommodation in the form of an egg crate mattress or extra mattress in violation of the ADA and Rehab Act. (Compl. at 38). Second, Plaintiff asserts that Sullivan was deliberately indifferent to his serious medical need for an egg crate mattress or extra mattress in violation of the Eighth Amendment. The Court considers each in turn.

A.   Claims Proceeding Under ADA and Rehab Act

Plaintiff, through his Complaint, asserts that Sullivan in violation of Title II of the ADA and Section 504 of the Rehab Act failed to make a reasonable accommodation for Plaintiff's physical disability by denying him an extra mattress or egg crate mattress. (Compl. at 12).

Title II of the ADA prohibits a "public entity" from discriminating against a "qualified individual with a disability" on account of that individual's disability. *See Pennsylvania Dep't of Corr. v. Yeskey*, 524 U.S. 206, 208 (1998) (citing 42 U.S.C. § 12131). To state a claim under

Title II of the ADA, a plaintiff must allege "that (1) he or she is a qualified individual with a disability; (2) that the defendants are subject to the ADA; and (3) that plaintiff was denied the opportunity to participate in or benefit from defendants' services, programs, or activities or was otherwise discriminated against by defendants, by reason of plaintiff's disabilities." *Shomo v. City of New York*, 579 F.3d 176, 185 (2d Cir. 2009); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 272 (2d Cir. 2003).

Section 504 of the Rehab Act imposes requirements nearly identical to those in Title II of the ADA. *See Henrietta D.*, 331 F.3d at 272. To state a claim under Section 504 of the Rehabilitation Act, a prisoner must establish that: (1) he is a qualified individual with a disability; (2) he is otherwise qualified to participate in the offered activity or program or to enjoy the services or benefits offered; (3) he is being excluded from participation or enjoyment solely by reason of his disability; and (4) the entity denying the inmate participation or enjoyment receives federal financial assistance. *Hallett v. New York State Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 198 (S.D.N.Y. 2000). A plaintiff bringing a claim under either statute must allege that his mistreatment "was motivated by either discriminatory animus or ill will due to disability." *Garcia v. S.U.N.Y. Health Scis. Ctr. of Brooklyn*, 280 F.3d 98, 112 (2d Cir. 1998).

Plaintiff alleges that Sullivan was aware of his disability but denied his multiple requests for an egg crate mattress as a reasonable accommodation. (Compl. at 12, 40, 123). These claims fail because Plaintiff in no way alleges that he was discriminated against on the basis of his disability, as required by both statutes. *See Maccharulo v. New York State Dep't of Corr. Servs.*, No. 08-CV-00301, 2010 WL 2899751, at *5 (S.D.N.Y. July 21, 2010) ("[A] claim that does not allege such discriminatory treatment is not a viable claim under [the ADA or Rehab Act]."). Indeed, Plaintiff concedes that he was not denied an accommodation due to a discriminatory

purpose; but rather, because Sullivan evaluated his medical condition and determined that an egg crate mattress was unnecessary. (*Id.* at 12, 123, Ex. G).

Accordingly, Plaintiff's ADA and Rehab Act claims against Sullivan with respect to his mattress are dismissed.

### B.  Eighth Amendment Claim

Plaintiff also asserts a claim for deliberate indifference to a serious medical need with respect to his mattress in violation of the Eighth Amendment. He brings this claim against Sullivan, his "primary health provider," whom he allegedly saw for medical treatment on multiple occasions. (Opp. at 36; Compl. at 11).[4] This claim proceeds against Sullivan in her individual capacity only, since the Eleventh Amendment bars § 1983 claims against the State of New York or individual Defendants in their official capacities as DOCCS employees. *Phillips v. New York*, No. 13-CV-00927, 2013 WL 5703629, at *3 (N.D.N.Y. Oct. 17, 2013) (citing *Vincent v. Yelich*, 718 F.3d 157, 177 (2d Cir. 2013)); *see also Keitt v. New York City*, 882 F. Supp. 2d 412, 424 (S.D.N.Y. 2011) ("Magistrate Judge Freeman properly concluded that Keitt's Section 1983, 1985, and 1986 claims against the State of New York and its agencies are barred by the [Eleventh] Amendment.").

---

[4] Plaintiff alleges that he mailed letters to several administrators, including Burnett, Akinyombo and Waylon, concerning Sullivan's denial of the egg crate or extra mattress. (Compl. at 13-15). However, receipt of Plaintiff's letters is not sufficient to establish personal involvement of these Defendants as required by 42 U.S.C. § 1983. *See Shomo v. City of New York*, 579 F.3d 176, 184 (2d Cir. 2009) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"); *Dawkins v. Copeland*, No. 17-CV-09926, 2019 WL 1437049, at *8 (S.D.N.Y. Mar. 31, 2019) ("[A] defendant's mere receipt of a grievance is insufficient to show their personal involvement in a constitutional deprivation."). Additionally, allegations that these individuals failed to supervise Sullivan do not establish liability. *See Russell v. Stanford*, No. 21-CV-00296, 2021 WL 1565147, at *5 (N.D.N.Y. Apr. 21, 2021) ("there is no special rule for supervisory liability. . . a plaintiff must plead and prove that each Government-official defendant, through the official's own actions, had violated the Constitution."). Accordingly, the Court construes this claim as proceeding solely against Sullivan.

42 U.S.C. § 1983 provides, in pertinent part, that "[e]very person who, under color of any statute . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured . . . ." "[T]his language . . . creates a mechanism by which individuals can vindicate the violation of rights secured elsewhere." *Linares v. Annucci*, No. 19-CV-11120, 2021 WL 2689736, at *6 (S.D.N.Y. June 30, 2021) (quoting *Santucci v. Levine*, No. 17-CV-10204, 2021 WL 76337, at *3 (S.D.N.Y. Jan. 8, 2021) (first alteration in original)). The allegations here allege a violation of the Eighth Amendment.

"The Cruel and Unusual Punishments Clause of the Eighth Amendment imposes a duty upon prison officials to ensure that inmates receive adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832, 844 (1994)). "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove 'deliberate indifference to [his] serious medical needs.'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998) (quoting *Estelle*, 429 U.S. at 104 (alteration in original)). "A plaintiff can prevail on a deliberate indifference to medical needs claim under the Eighth Amendment by satisfying a two-prong test." *Sutton v. Rodriguez*, No. 18-CV-01042, 2020 WL 5504312, at *4 (S.D.N.Y. Sept. 8, 2020). Generally, as explained by this Court previously:

> [t]he first prong is objective and requires that the alleged
> deprivation in medical care be sufficiently serious. A deprivation
> in medical care is sufficiently serious if (1) the prisoner was
> actually deprived of adequate medical care and (2) the inadequacy
> in medical care is sufficiently serious. The latter inquiry
> contemplates a condition of urgency that may result in
> degeneration or extreme pain.
> . . . .
> The second prong of the deliberate indifference test under the
> Eighth Amendment is subjective and requires that the plaintiff
> demonstrate that the defendant had a sufficiently culpable state of
> mind. A defendant had a sufficiently culpable state of mind if he
> acted or failed to act while actually aware of a substantial risk that
> serious inmate harm will result.

*Id*. at \*4-5 (internal citations and quotation marks omitted).

Construing Plaintiff's Complaint liberally, he alleges that Sullivan was deliberately indifferent to his medical needs because Sullivan denied his request for an egg crate mattress or an extra mattress to assist with "severe medical issues." (Compl. at 12-13; Opp. at 28). Defendants argue that Plaintiff's deliberate indifference claim fails because he has not alleged an objectively serious medical risk or a sufficiently culpable state of mind. (Mot. at 9).

With respect to the objective prong, Courts in the Second Circuit have recognized that "the condition of a prisoner's mattress may be so inadequate as to constitute an unconstitutional deprivation." *Walker v. Schult*, 717 F.3d 119, 127 (2d Cir. 2013). In order to state a claim for deliberate indifference to medical needs based on an inadequate mattress, "a plaintiff must allege that he had a medical condition requiring a non-standard bed to protect against serious damage to his future health or that the medical condition was itself created by an inadequate bed or mattress." *Jones v. City of New York*, No. 18-CV-01937, 2020 WL 1644009 at \*7 (S.D.N.Y. Apr. 2, 2020). The allegations in the Complaint demonstrate that Plaintiff had chronic lower back pain as a result of prior injuries that required him to sleep on a more supportive mattress to

support the lumbar region of his spine. (Compl. at 4, 11). Plaintiff allegedly endured mental and emotional damages without that extra mattress support such as "extreme pain and suffering, loss of sleep, depression, weight loss, and [Plaintiff] was unable to attend recreation, breakfast due to the pain, and suffering upon waking . . ." (Compl. at 14-15).[5] These allegations are sufficient to satisfy the objective prong.

The subjective prong requires that Plaintiff prove "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed." *Adamson v. Miller*, 808 F. App'x 14, 18 (2d Cir. 2020) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017)). Plaintiff alleges that Sullivan possessed his health records which documented his medical condition and showed that Plaintiff's previous correctional facility found he had a medical need for an egg crate mattress. (*Id*. at 120-121, Ex. F). These allegations are sufficient to show that Sullivan had a sufficiently culpable state of mind as she was actually aware of the substantial risk that serious harm would occur to Plaintiff without the mattress.

Accordingly, Plaintiff plausibly states a deliberate indifference claim against Sullivan with respect to his requests for an egg crate mattress or extra mattress.

---

[5] Plaintiff acknowledges that he utilized an extra mattress at some point while incarcerated at Fishkill (Compl. at 16), thus making the period of time he suffered the alleged injury unclear. However, construing the Complaint in favor of Plaintiff, the Court recognizes that Plaintiff did not have an extra mattress for the majority of time he was incarcerated at Fishkill and currently does not have one, as it was allegedly taken away by Gibbons on December 31, 2021. (Compl. at 16-17).

III.     Third Claim for Relief: Excessive Force

Plaintiff's third claim for relief is for excessive force against Gibbons in violation of

violation of the Eighth Amendment. This claim for relief proceeds against Gibbons in her

individual capacity only, rather than her official capacity as a DOCCS employee, as explained

*supra*.

"A prison official's use of force violates the Eighth Amendment when, objectively, 'the

alleged punishment [was] . . . sufficiently serious,' and, subjectively, 'the prison official . . .

[had] a sufficiently culpable state of mind.'" *Tofres v. City of New York*, No. 17-CV-06604,

2019 WL 7602181, at *6 (S.D.N.Y. Aug. 14, 2019) (quoting *Boddie v. Schnieder*, 105 F.3d 857,

861 (2d Cir. 1997) (alterations in original), *adopted by* 2019 WL 4784756 (S.D.N.Y. Sept. 30,

2019)). "The objective component of a claim of cruel and unusual punishment focuses on the

harm done, in light of 'contemporary standards of decency.'" *Wright v. Goord*, 554 F.3d 255,

268 (2d Cir. 2009) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). This objective

component requires, in the abstract, "that the conduct was objectively harmful enough or

sufficiently serious to reach constitutional dimensions." *Bradshaw v. City of New York*, 855 F.

App'x 6, 9 (2d Cir. 2021) (quoting *Harris v. Miller*, 818 F.3d 49, 64 (2d Cir. 2016)). The

subjective component, on the other hand, requires a "showing that 'the defendant had the

necessary level of culpability, shown by actions characterized by wantonness in light of the

particular circumstances surrounding the challenged conduct.'" *Randolph v. Griffin*, 816 F.

App'x 520, 523 (2d Cir. 2020) (quoting *Harris*, 818 F.3d at 63). "[T]he test for wantonness is

whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously

and sadistically to cause harm." *Fabricio v. Annucci*, 790 F. App'x 308, 310 (2d Cir. 2019)

(quoting *Harris*, 818 F.3d at 63).

Of course, in evaluating an excessive force claim, courts must also bear in mind that "[n]ot every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (internal quotation marks omitted), and "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." *Id*. at 9-10 (internal quotation marks omitted). However, "[w]hen prison officials maliciously and sadistically use force to cause harm, a plaintiff need not demonstrate significant injury because, in those circumstances, contemporary standards of decency always are violated. Thus, the malicious use of force to cause harm constitutes an Eighth Amendment violation *per se*." *Greenburger v. Roundtree*, No. 17-CV-03295, 2020 WL 6561598, at *4 (S.D.N.Y. Jan. 16, 2020) (internal citations and quotation marks omitted), *adopted by* 2020 WL 4746460 (S.D.N.Y. Aug. 16, 2020); *see also Wright*, 554 F.3d at 269 ("[W]here a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically, our Court has reversed summary dismissals of Eighth Amendment claims of excessive force even where the plaintiff's evidence of injury was slight and the proof of excessive force was weak."); *White v. Marinelli*, No. 17-CV-01094, 2019 WL 1090802, at *10 (N.D.N.Y. Mar. 8, 2019) ("[P]hysical assaults by guards to humiliate an inmate, or in retaliation for past conduct, violate the Eighth Amendment.").

Here, Plaintiff alleges that on December 31, 2021, Gibbons forced him to stand for a prolonged period of time despite knowing that he was not physically able, causing him to fall

down and suffer severe injuries. (Compl. at 17). Plaintiff further alleges that Gibbons took this action against him in retribution for an incident that Plaintiff had with other correctional officers the day prior and Plaintiff's claims that he would file grievances and/or a lawsuit over that incident. (*Id*.; Opp. at 31). At this stage, these allegations are sufficient to state a claim for excessive force.

With respect to the objective prong, Plaintiff alleges that at the time of the incident he was suffering a recently injured ankle and wrist in addition to his disability. (Compl. at 16). After twenty minutes of standing upright, he fell down "hitting my head, and injuring my head, neck, back, wrist, and ankle" and was taken to medical in a wheelchair. (*Id*. at 17). Although the injury report resulting from the fall and appended to Plaintiff's Complaint reports "no new injuries sustained" and "[Plaintiff] claims he is fine," (Compl. at 134, Ex. K), construing the facts in Plaintiff's favor, the fall caused him to severely exacerbate his already existing injuries. (*Id*. at 42). In particular, Plaintiff claims the fall contributed to him having "severe injuries to the head, neck, back, leg, knees, and ankle as well as exasperating already existing injuries." (*Id*.) Such injuries are sufficient to meet the first prong.

With respect to the subjective component, Plaintiff alleges that Gibbons targeted him because he intended to file grievances and/or a lawsuit against her co-workers who had allegedly assaulted him the day before. (Compl. at 16; Opp. at 31). She approached him while he was lying in bed elevating his bandaged foot and demanded that he get out of bed so that she could "flip" his cubical. (Opp. at 31). He informed her multiple times that he was medically unable to stand upright, but she ordered him to stand up and stare at the wall without any assistance. (Compl. at 16-17; Opp. at 31). Gibbons allegedly responded, in response to Plaintiff's complaints, "I read the log book, and know what happen[ed] yesterday, and I don't care." (Compl. at 16). Plaintiff

asserts that Gibbons threatened further injury if he did not comply with her order. (*Id*. at 17). There are no plausible facts suggesting that Gibbons ordered Plaintiff to remain standing in an effort to maintain or restore discipline. Rather, these facts demonstrate that Gibbons was aware of Plaintiff's medical condition and, with a malicious motive, forced him into a medically dangerous standing position for an extended period of time.

Accordingly, at this stage, Plaintiff has sufficiently alleged the third claim for excessive force against Gibbons.[6]

IV.    Fourth Claim for Relief: Discrimination Based On Disability

Plaintiff asserts a claim for disability discrimination under Title II of the ADA and the Rehab Act in connection with his rejection from educational programs. The claim for relief appears aimed at Fishkill's administration in general so the Court construes this as a claim against the State of New York.[7]

---

[6] To the extent Plaintiff intended that the third claim for relief be construed as a claim for retaliation, that claim is dismissed. First Amendment retaliation claims brought by prisoners must "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015). At the time of Gibbons' alleged adverse action, Plaintiff states that he was "making claims of filing suit" against the correctional officers who had allegedly assaulted him the day before. (Compl. at 17). These allegations that Plaintiff may have communicated an intention to bring a civil lawsuit against unidentified correctional officers over an incident that did not involve Gibbons, without more context, do not constitute a plausible retaliation claim against Gibbons.

[7] To the extent Plaintiff brings this claim against individual administrators (Gonzalez, Burnett, and Woods) who allegedly received complaints and grievances about Plaintiff's rejection from educational programs, the Court dismisses the claim against these individual Defendants. *See Harris v. N.Y.C. Hum. Res. Admin.*, No. 20-CV-02011, 2022 WL 3100663, at *6 (S.D.N.Y. Aug. 4, 2022) ("Individuals face no personal liability under the ADA . . . and the Rehabilitation Act.") (citing *Spiegel v. Schulman*, 604 F.3d 72, 79 (2d Cir. 2010)); *Hallett v. New York State Dep't of Corr. Servs.*, 109 F. Supp. 2d 190, 200 (S.D.N.Y. 2000) ("Because plaintiff is able to assert his ADA and Rehabilitation Act claims against [the state entity] directly, I find that there is no justification for allowing plaintiff to also assert [the same] claims against the individual defendants in their official capacities.").

"Disability discrimination claims under the Rehabilitation Act . . . are analyzed under the same standard used for ADA discrimination claims." *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 2020 WL 5758752, at *4 (S.D.N.Y. Sept. 28, 2020).

As a threshold matter, Plaintiff sufficiently alleges that he had a disability while incarcerated at Fishkill. He suffered severe injuries from a stabbing which resulted in a "physical impairment that substantially limited [his] major life activities, including but not limited to caring for [himself], eating, sleeping, walking . . ." (Compl. at 4, 46, 63). His previous correctional facility noted permanent limitations on his health records, including that Plaintiff "may not be able to stand for prolonged periods." (Opp. at 33, Ex. E). Additionally, the Social Security Administration deemed Plaintiff disabled in March 2013. (Opp. at 20). The foregoing allegations are sufficient to support that Plaintiff has a disability under the ADA.

Plaintiff claims he was rejected from educational programs offered by Fishkill, such as the "college program" and "puppy program", because of his disability and despite having been qualified for the courses. (Compl. at 46). Plaintiff further alleges that he received a letter from administrators at Fishkill stating that he was unable to participate in the educational programs due to his medical condition and/or disability. (*Id.*).[8] As a result, Plaintiff was unable to earn time credit that may have resulted in him being conditionally released six months earlier. (*Id.* at 46-47). Taking these facts as true, Plaintiff has sufficiently alleged that he was excluded from participation in educational programs at Fishkill because of his disability in violation of Title II of the ADA.

---

[8] Plaintiff's Exhibit M appended to the Complaint indicates "please read response on back of letter" and purports to show the letter Plaintiff received back from the administration. However, the administration's alleged response on the back of the letter is not visible in the as-filed Exhibit M.

Accordingly, at this stage, the fourth claim for discrimination based on disability is plausibly plead against the State of New York.

V.    Fifth Claim for Relief: Unconstitutional Conditions of Confinement

Plaintiff brings a fifth claim for relief for unconstitutional conditions of confinement in violation of the Eighth Amendment against unspecified Defendants.

As a fundamental prerequisite "[t]o establish[ing] a § 1983 claim, a plaintiff must show the defendants' personal involvement in the alleged constitutional violation." *Boley v. Durets*, 687 F. App'x 40, 41 (2d Cir. 2017) (citing *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994)). Failing to allege that a defendant was personally involved in, or responsible for, the conduct complained of renders a complaint "fatally defective on its face." *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 886 (2d Cir. 1987) (internal quotation marks omitted). Plaintiff describes several problematic housing conditions at Fishkill (Compl. at 21-23), but does not allege any individual Defendant as being involved in or responsible for causing those conditions.

Accordingly, Plaintiff's fifth claim for unconstitutional conditions of confinement is dismissed as to all Defendants.

VI.    Sixth Claim for Relief: Denial of Access to Courts

Plaintiff asserts a claim for relief for denial of access to courts based on inadequate access to and resources at the Fishkill Correctional Facility law library in against unspecified Defendants. (*Id.* at 24-25, 53-54).   As explained *supra*, this § 1983 claim requires personal involvement of individual Defendants. Plaintiff, however, does not identify any named Defendant as being involved in or responsible for that those issues with access to the law library.

Accordingly, Plaintiff's claim for denial of access to courts is dismissed as to all Defendants.

VII.   <u>Seventh Claim for Relief: Deliberate Indifference to Medical Needs With Respect to Medication and Therapy</u>

Plaintiff asserts a seventh claim for relief against Sullivan alleging that she was deliberately indifferent to his medical needs in violation of the Eighth Amendment by (1) prescribing him Meloxicam instead of Gabapentin for pain relief; and (2) denying him physical therapy. (Compl. at 12-13; Opp. at 28).

The test for deliberate indifference, to a serious medical need under the Eighth Amendment, laid out *supra*, exists with a caveat: "a prisoner is not entitled to the best healthcare possible or even to a choice among available treatment modalities." *Robinson v. Wolf-Friedman*, No. 18-CV-02409, 2019 WL 4640236, at *6 (S.D.N.Y. Sept. 24, 2019) (internal quotation marks omitted). "Indeed, prison officials and medical officers have wide discretion in treating prisoners, and Section 1983 is not designed to permit federal courts to interfere in the ordinary medical practices of state prisons." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001). "If a prisoner's course of treatment is one about which reasonable doctors could disagree, an Eighth Amendment claim will not ordinarily lie." *Dichiara v. Pataki*, No. 06-CV-06123, 2007 WL 749742, at *3 (E.D.N.Y. Mar. 7, 2007); *see also Sonds*, 151 F. Supp. 2d at 311 ("A difference of opinion between a prisoner and prison officials regarding medical treatment does not, as a matter of law, constitute deliberate indifference.").

A.   <u>Claims Regarding Pain Medication</u>

Plaintiff argues that Sullivan should have prescribed Meloxicam instead of Gabapentin, yet asserts this claim for relief is "in no way a claim for choice of treatment." (Opp. at 28). However, the gravamen of Plaintiff's allegations are not that he was *denied* medical care, but that he did not receive his preferred mode of treatment. Thus, the Court construes this claim for relief as a disagreement over the proper treatment. An allegation that Sullivan prescribed the

wrong pain medication is not evidence of deliberate indifference to his medical condition. *See Chance*, 143 F.3d at 703   ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim. So long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation."); *see also Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011) (affirming dismissal where inmate was prescribed Motrin for his nerve condition but sought stronger pain medication and "nerve conduction study").

However, the Second Circuit has held that "a deliberate indifference claim can lie where prison officials deliberately ignore the medical recommendations of a prisoner's treating physicians." *Johnson v. Wright*, 412 F.3d 398, 404 (2d Cir. 2005). Construing the Complaint liberally, a pain management doctor prescribed Plaintiff Meloxicam during his incarceration at Fishkill. (Compl. at 13, 57). Sullivan was allegedly aware of this prescription from the pain management doctor but refused to provide Plaintiff with the prescribed medication because of a custom that Fishkill does not give out Meloxicam. (*Id*. at 13-14, 57). Sullivan's awareness of a specialty physician's recommendation, combined with Plaintiff's many complaints that Gabapentin was ineffective to manage his chronic pain, sufficiently allege that Sullivan acted with a culpable state of mind.

Plaintiff's claim for deliberate indifference concerning pain medication asserted against Sullivan is sufficiently alleged at this stage.

B.  Claims Regarding Physical Therapy

Plaintiff further alleges that Sullivan was deliberately indifferent to his serious medical need for physical therapy. However, Plaintiff failed to allege that deprivation of physical therapy "pose[d] an unreasonable risk of serious damage to his health" such that the deprivation was

sufficiently serious. *Walker*, 717 F.3d at 125. Plaintiff makes a vague allegation that his "request to get physical therapy was ignored." (Compl. at 27). He does not, however, indicate that physical therapy was necessary or previously used to alleviate any specific aspects of his medical condition. Threadbare allegations that Plaintiff suffered chronic pain and was not prescribed physical therapy, without more, do not satisfy the objective prong of a deliberate indifference claim. *See Stapleton v. Pagano*, No. 19-CV-00952, 2021 WL 3501163, at *5 (S.D.N.Y. Aug. 9, 2021) ("Plaintiff's threadbare allegations—that the lack of physical therapy caused "deteriorat[ion]" and "pain" in his knee . . . are insufficient, without more, to satisfy the first element of a deliberate indifference claim. . .")(collecting cases).

Accordingly, Plaintiff's claim for deliberate indifference concerning physical therapy asserted against Sullivan fails at the first prong and is dismissed.

VIII.   <u>Conclusion</u>

For the foregoing reasons, Defendant's motion to dismiss is DENIED as to the second (deliberate indifference regarding mattress), third, fourth, and seventh (deliberate indifference regarding medication) claims for relief and is GRANTED as to Plaintiff's first, second (reasonable accommodation regarding mattress), fifth, sixth, and seventh (deliberate indifference regarding physical therapy) claims for relief.

Plaintiff's second, third, fourth, and seventh claims for deliberate indifference regarding his mattress, excessive force, discrimination on the basis of disability, and deliberate indifference regarding his medication shall proceed to discovery.

Defendants are directed to file an answer to the complaint within 30 days of the date of this Order. The Court will thereafter docket a Notice of Initial Conference.

**SO ORDERED.**

Dated:    White Plains, New York
          June 7, 2023

_____
PHILIP M. HALPERN
United States District Judge