UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

RALPH RODRIGUEZ,

               Plaintiff,

     -against-

EDWARD BURNETT, et al.,

               Defendants.

**OPINION & ORDER**

22-CV-02198 (PMH)

---

PHILIP M. HALPERN, United States District Judge:

Ralph Rodriguez ("Plaintiff"), currently incarcerated at Fishkill Correctional Facility ("Fishkill"), initiated this action *pro se* and *in forma pauperis* under 42 U.S.C. § 1983, predicated upon violations of the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and Section 504 of the Rehabilitation Act ("Rehab Act"), 29 U.S.C. § 794. (Doc. 2, "Compl."). On June 7, 2023, the Court granted in part and denied in part the motion to dismiss Plaintiff's Complaint. (Doc. 40).[1] The sole remaining Defendants, Alexandra Ayana Gibbons ("Gibbons"), Davachi M. Sullivan ("Sullivan"), and the State of New York, filed an Answer on July 7, 2023. (Doc. 41). The following claims for relief proceeded to discovery pursuant to a Civil Case Discovery Plan and Scheduling Order (Doc. 52): (i) deliberate indifference to medical needs with respect to Plaintiff's mattress asserted against Sullivan; (ii) deliberate indifference to medical needs with respect to Plaintiff's medication asserted against Sullivan; (iii) excessive force asserted against Gibbons; and (iv) discrimination based on disability asserted against the State of New York. (Doc. 40).

---

[1] The Prior Order is available on commercial databases. *See Rodriguez v. Burnett*, No. 22-CV-02198, 2023 WL 3902705 (S.D.N.Y. June 7, 2023).

Gibbons served her partial motion for summary judgment in accordance with the briefing schedule set by the Court. (Doc. 91; Doc. 92, "Def. Br."; Doc. 93, "Shevlin Decl."; Doc. 94). Following an extension of time, Plaintiff opposed Gibbons's motion (Doc. 95; Doc. 98; Doc. 99, "Pl. Decl."; Doc. 100, "Pl. Br."; Doc. 101), and the motion was fully briefed with the filing of Gibbons's reply papers (Doc. 102, "Reply").

For the reasons set forth below, Gibbons's partial motion for summary judgment is GRANTED.

## BACKGROUND[2]

The Court recites the facts herein only to the extent necessary to adjudicate the extant motion for summary judgment and draws them from the pleadings, Defendant's Rule 56.1

---

[2] On April 25, 2024, Defendant filed a Joint Rule 56.1 Statement (Doc. 83-1, "56.1"), which included Plaintiff's responses to Defendant's Statement of Undisputed Material Facts (Doc. 81). Thereafter, Plaintiff submitted his own "Statement of Undisputed Material Facts Pursuant to Fed. R. Civ. P. 56 and Local Civil Rule 56.1" in connection with his opposition to the motion for summary judgment, which largely repeats the substance of the Joint Rule 56.1 Statement but in some cases paraphrases and/or adds new information to Defendant's proffered statements. (Doc. 101, "Pl. 56.1"). Defendant Gibbons asks the Court not to consider Plaintiff's later-filed Rule 56.1 Statement on the basis that it is an unauthorized submission and, to the extent the Court considers the submission, specifically objects to the newly added portions. (Reply at 3). While "*pro se* litigants are [ ] not excused from meeting the requirements of Local Rule 56.1 . . . where a *pro se* plaintiff fails to submit a proper Rule 56.1 statement in opposition to a summary judgment motion, the Court retains some discretion to consider the substance of the plaintiff's arguments, where actually supported by evidentiary submissions." *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 178 (S.D.N.Y. 2009); *see also Gadson v. Goord*, No. 96-CV-07544, 2000 WL 328879, at *3 (S.D.N.Y. Mar. 28, 2000) ("Plaintiff did not submit a Statement Pursuant to Civil Rule 56.1. Instead, he submitted 'Plaintiff's Opposition for Defendant's Memorandum of Law in Support of Motion for Summary Judgment,' stating his disagreement with the defendant's version of the facts. In light of plaintiff's *pro se* status, the Court will accept this memorandum in lieu of a Rule 56.1 Statement."). The Court considers the newly added information in Plaintiff's Rule 56.1 Statement to the extent it reflects his disagreement with Defendant's statements made in the Joint Rule 56.1 Statement and only where that disagreement is supported by evidence in the record. The Court is mindful that bald and conclusory statements do not constitute opposition to Defendant's Rule 56.1 Statement. *See Woods v. Acampora*, No. 08-CV-04854, 2009 WL 1835881, at *3 (S.D.N.Y. June 24, 2009) ("[A] *pro se* party's 'bald assertion' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment." (quoting *Odom v. Keane*, 1997 WL 576088, at *3 (S.D.N.Y. Sept. 17, 1997))).

Statement with Plaintiff's responses thereto, and the admissible evidence proffered by the parties. Unless otherwise indicated, the facts cited herein are undisputed.

On December 31, 2021, during Plaintiff's incarceration at Fishkill, Gibbons conducted officer rounds in and around Plaintiff's Housing Unit 9-1. (56.1 ¶¶ 1-4). Upon passing Plaintiff's bed, Gibbons saw that Plaintiff was using two mattresses in his bed frame. (*Id*. ¶ 5). Plaintiff had been injured in a previous, unrelated incident and maintains that Gibbons was aware of his "clearly apparent" injuries, including his elevated bandaged left ankle and his bandaged right wrist. (Shevlin Decl., Ex. B "Pl. Tr." at 115:4-6, 118:2-8; 56.1 ¶ 5; Pl. 56.1 ¶ 5; Compl. at 16).

The New York State Department of Corrections and Community Supervision ("DOCCS") regulations provide that incarcerated individuals are entitled to a single mattress. (56.1 ¶ 6; Shevlin Decl., Ex. D). Plaintiff does not dispute this regulation but separately contends that he is entitled to a second mattress as a reasonable accommodation for his disability.[3] (56.1 ¶ 6; Pl. 56.1 ¶ 6). Plaintiff informed Gibbons that it was medically necessary for him to have the second mattress and that he was supposed to have a double mattress, legally. (56.1 ¶ 7). The parties dispute whether Gibbons called the Regional Medical Unit at Fishkill to ascertain whether Plaintiff had a medical accommodation for additional or alternative bedding. (*Id*. ¶ 8). The dispute is immaterial, however, given that Plaintiff argues in opposition to the motion that he "*should* have had a double mattress pass," was "entitled" to one, and "had the medical pass in prior facilities," effectively conceding that he did not have a permit for a second mattress at the time of the incident. (Pl. Br. at 8; Reply at 5 (emphasis added)).

---

[3] At the time of the incident, Plaintiff suffered from a disability due to localized muscle and nerve damage in his right arm. (56.1 ¶ 17).

Gibbons directed Plaintiff to remove the mattress, and Plaintiff stated that he could not because of his injuries. (56.1 ¶ 9; Pl. Br. at 7). Gibbons ordered Plaintiff out of his dorm while she removed the mattress. (56.1 ¶ 10). Plaintiff testified that Gibbons took him out of the housing unit into the hallway and told him to stare at the wall until she was done. (Pl. Tr. at 122:8-15). Plaintiff further testified that Gibbons threatened to "pull [her] pin," meaning call for backup, if he "[got] off the wall." (*Id*. at 121:9-12, 122:8-15). Plaintiff maintains that during this encounter, he told her that he could not move around and that he was in pain. (*Id*. at 121:17-18). Plaintiff fell after approximately twenty minutes of standing. (*Id*. at 123:9-11; 56.1 ¶ 11). Plaintiff testified that his leg went out and that he hit his head on the wall. (Pl. Tr. at 126:5-16). There was never any physical contact between Gibbons and Plaintiff. (56.1 ¶ 19; Pl. 56.1 ¶ 19).

Upon being informed that Plaintiff fell, Gibbons called a "code green," which was a medical emergency. (56.1 ¶ 12; Pl. 56.1 ¶ 12). Plaintiff immediately received medical attention in the Fishkill Clinic. (56.1 ¶ 14). Medical staff recorded, in the Ambulatory Health Record for December 31, 2021, that Plaintiff "sustained no new injuries, denie[d] hitting head," and was "able to ambulate [without] difficulty." (56.1 ¶ 15; Shevlin Decl., Ex. E). Plaintiff contends that this record is entirely false except for the portion indicating that he stood for twenty minutes. (*Id*.; Pl. Tr. at 132:9-13, 135:18-20; Pl. Br. at 8).

Plaintiff testified that after the fall he felt pain in his neck, back, legs, foot, and right arm. (Pl. Tr. at 130:24-25). Plaintiff said that his pain began because of the prior, unrelated incident but that his injuries were exacerbated by the fall. (*Id*. at 130:11-13). Plaintiff received Aspirin and diclofenac cream following the December 31 incident, which he applied to his left ankle, right wrist, and back. (*Id*. at 141:21-142:22). Plaintiff received an x-ray on January 4, 2022, which reported an "unremarkable" cervical spine, and no fracture, dislocation, or arthritic change to

Plaintiff's left ankle, rib cage, left knee, or right wrist. (56.1 ¶ 16; Shevlin Decl., Ex. F).[4] Plaintiff received physical therapy on his ankle between March and July 2022. (Pl. Br. at 8, 12; *id.*, Ex. B). Plaintiff still feels pain in his left ankle but has never been diagnosed with any type of ailment to his left ankle. (Pl. Tr. at 143:15-17; 56.1 ¶ 18).

This litigation followed.

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "A fact is 'material' if it 'might affect the outcome of the suit under the governing law,' and is genuinely in dispute 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Liverpool v. Davis*, No. 17-CV-03875, 2020 WL 917294, at *4 (S.D.N.Y. Feb. 26, 2020) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).[5] "'Factual disputes that are irrelevant or unnecessary' are not material and thus cannot preclude summary judgment." *Sood v. Rampersaud*, No. 12-CV-05486, 2013 WL 1681261, at *1 (S.D.N.Y. Apr. 17, 2013) (quoting *Anderson*, 477 U.S. at 248). "The question at summary judgment is whether a genuine dispute as to a *material* fact exists—not whether the parties have a dispute as to any fact." *Hernandez v. Comm'r of Baseball*, No. 22-343, 2023 WL 5217876, at *5 (2d Cir. Aug. 15, 2023) (citing *McKinney v. City of Middletown*, 49 F.4th 730, 737 (2d Cir. 2022)).

---

[4] Plaintiff's response in the Joint Rule 56.1 Statement does not contest the accuracy of this x-ray report but refers to "severe tendon and muscle damages requiring the use of crutches." (56.1 ¶ 16). Plaintiff conceded at his deposition, however, that the x-ray report does not indicate tendon or muscle damages and that this was an "assumption one of the nurses made" at some undisclosed time (Pl. Tr. at 140:7-14).

[5] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

The Court's duty, when determining whether summary judgment is appropriate, is "not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *McKinney*, 49 F.4th at 738 (quoting *Wilson v. Nw. Mut. Ins. Co.*, 625 F.3d 54, 60 (2d Cir. 2010)). Indeed, the Court's function is not to determine the truth or weigh the evidence. The task is material issue spotting, not material issue determining. Therefore, "where there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements of the claim are immaterial." *Bellotto v. Cnty. of Orange*, 248 F. App'x 232, 234 (2d Cir. 2007) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 281 (2d Cir. 2006)).

"It is the movant's burden to show that no genuine factual dispute exists." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). The Court must "resolve all ambiguities and draw all reasonable inferences in the non-movant's favor." *Id.* (citing *Giannullo v. City of N.Y.*, 322 F.3d 139, 140 (2d Cir. 2003)). Once the movant has met its burden, the non-movant "must come forward with specific facts showing that there is a genuine issue for trial." *Liverpool*, 2020 WL 917294, at *4 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). The non-movant cannot defeat a summary judgment motion by relying on "mere speculation or conjecture as to the true nature of the facts." *Id.* (quoting *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)). However, if "there is any evidence from which a reasonable inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, summary judgment is improper." *Sood*, 2013 WL 1681261, at *2 (citing *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004)).

Should there be no genuine issue of material fact, the movant must also establish its entitlement to judgment as a matter of law. *See Glover v. Austin*, 289 F. App'x 430, 431 (2d Cir.

2008) ("Summary judgment is appropriate if, but only if, there are no genuine issues of material fact supporting an essential element of the plaintiffs' claim for relief."); *Pimentel v. City of New York*, 74 F. App'x 146, 148 (2d Cir. 2003) (holding that because plaintiff "failed to raise an issue of material fact with respect to an essential element of her[] claim, the District Court properly granted summary judgment dismissing that claim"). Simply put, the movant must separately establish that the law favors the judgment sought.

The Court is, of course, mindful that "[p]*ro se* litigants are afforded a special solicitude," which includes reading their filings "to raise the strongest arguments they suggest." *Mortimer v. City of New York*, No. 15-CV-07186, 2018 WL 1605982, at *9 (S.D.N.Y. Mar. 29, 2018). "It is through this lens of leniency towards *pro se* litigants that this Court must consider a defendant's motion for summary judgment against a *pro se* plaintiff." *Adams v. George*, No. 18-CV-02630, 2020 WL 5504472, at *5 (S.D.N.Y. Sept. 8, 2020). This status does not, however, excuse a *pro se* litigant from making the showing required to defeat summary judgment; he or she must offer more than "bald assertions, completely unsupported by evidence" to overcome the motion. *Wisdom v. Loiodice*, No. 17-CV-04837, 2020 WL 4431590, at *4 (S.D.N.Y. July 31, 2020); *see also Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (explaining that the mere fact that a litigant is *pro se* "does not relieve plaintiff of his duty to meet the requirements necessary to defeat a motion for summary judgment"); *Ross v. Koenigsmann*, No. 14-CV-01321, 2017 WL 9511096, at *1 (N.D.N.Y. Aug. 16, 2017), *adopted sub nom. Ross v. Mannava*, 2017 WL 4338883 (N.D.N.Y. Sept. 29, 2017).

## **ANALYSIS**

Gibbons seeks summary judgment only as to Plaintiff's excessive force claim. (Doc. 91). "A prison official's use of force violates the Eighth Amendment when, objectively, 'the alleged

punishment [was] . . . sufficiently serious,' and, subjectively, 'the prison official . . . [had] a sufficiently culpable state of mind.'" *Tofrres v. City of New York*, No. 17-CV-06604, 2019 WL 7602181, at *6 (S.D.N.Y. Aug. 14, 2019) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997) (alterations in original), *adopted by* 2019 WL 4784756 (S.D.N.Y. Sept. 30, 2019)). "The objective component of a claim of cruel and unusual punishment focuses on the harm done, in light of 'contemporary standards of decency.'" *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)). This objective component requires, in the abstract, "that the conduct was objectively harmful enough or sufficiently serious to reach constitutional dimensions." *Bradshaw v. City of New York*, 855 F. App'x 6, 9 (2d Cir. 2021) (quoting *Harris v. Miller*, 818 F.3d 49, 64 (2d Cir. 2016)). The subjective component, on the other hand, requires a "showing that 'the defendant had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct.'" *Randolph v. Griffin*, 816 F. App'x 520, 523 (2d Cir. 2020) (quoting *Harris*, 818 F.3d at 63). "[T]he test for wantonness is whether the force was used in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Fabricio v. Annucci*, 790 F. App'x 308, 310 (2d Cir. 2019) (quoting *Harris*, 818 F.3d at 63).

Of course, in evaluating an excessive force claim, courts must also bear in mind that "[n]ot every push or shove, even if it later may seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (internal quotation marks omitted), and "not . . . every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to the conscience

of mankind." *Id*. at 9-10 (internal quotation marks omitted). However, "[w]hen prison officials maliciously and sadistically use force to cause harm, a plaintiff need not demonstrate significant injury because, in those circumstances, contemporary standards of decency always are violated. Thus, the malicious use of force to cause harm constitutes an Eighth Amendment violation *per se*." *Greenburger v. Roundtree*, No. 17-CV-03295, 2020 WL 6561598, at *4 (S.D.N.Y. Jan. 16, 2020) (internal citations and quotation marks omitted), *adopted by* 2020 WL 4746460 (S.D.N.Y. Aug. 16, 2020); *see also Wright*, 554 F.3d at 269 ("[W]here a prisoner's allegations and evidentiary proffers could reasonably, if credited, allow a rational factfinder to find that corrections officers used force maliciously and sadistically, our Court has reversed summary dismissals of Eighth Amendment claims of excessive force even where the plaintiff's evidence of injury was slight and the proof of excessive force was weak."); *White v. Marinelli*, No. 17-CV-01094, 2019 WL 1090802, at *10 (N.D.N.Y. Mar. 8, 2019) ("[P]hysical assaults by guards to humiliate an inmate, or in retaliation for past conduct, violate the Eighth Amendment.").

Plaintiff essentially argues that Gibbons's directive to Plaintiff to stand for approximately twenty minutes constitutes excessive force because she was aware that he had an ankle injury at the time. (Pl. Br. at 9, 12). With respect to the objective prong, Gibbons contends that the alleged force used against Plaintiff was *de minimis*. (Def. Br. at 8). Specifically, Gibbons argues that the "harm of being forced to stand with no evidence of an actual injury to accompany the standing action fails to qualify as an objectively serious deprivation." (*Id*. at 10). Here, according to Plaintiff, Gibbons saw that he had a bandaged left ankle when she ordered him to get off the bed. Despite Plaintiff's protests that he was in pain and could not move around, Plaintiff walked over to the wall and stood against it. Plaintiff remained standing in the hallway while Gibbons worked in his cell to remove the second mattress. Plaintiff fell after approximately twenty minutes.

Plaintiff's claimed injury from the alleged excessive force is the exacerbation of previously existing injuries. By Plaintiff's own admission, he was injured and in pain prior to the fall. (Pl. Tr. at 108:11-24, 130:11-13). Plaintiff specifically testified that the unrelated prior incident was the beginning of his pain, and that his "injuries [were] exacerbated by [Gibbons's] direct actions." (*Id.* at 130:11-13). Although Plaintiff generally references injuring his neck, head, and ankle, he does not explain how any particular pre-existing injury was exacerbated by the fall, nor how any exacerbation impacted his injuries long-term. (Pl. Br. at 12). Plaintiff was provided Aspirin and a topical cream after the fall. Plaintiff emphasizes that he went to physical therapy for his left ankle but does not claim that this treatment was necessitated by the exacerbation of his ankle injury (as opposed to the previously existing ankle injury). Accordingly, "no evidence shows any injury or lasting pain resulting from" Plaintiff's fall. *Taylor v. New York Dep't of Corr.*, No. 10-CV-03819, 2012 WL 2469856, at *5 (S.D.N.Y. June 27, 2012). Even discounting the purportedly false medical record from the day of the incident that undermines Plaintiff's version of events (Shevlin Decl., Ex. E), the undisputed evidence shows that Plaintiff had no fracture, dislocation, or arthritic change to his left ankle, and he was never diagnosed with any type of ailment to his left ankle. (56.1 ¶¶ 16, 18). The vague nature of Plaintiff's claimed injury, combined with the fact that only minimal medical care was necessary after the fall, lead to the conclusion that the force used was indeed *de minimis*.

Accordingly, to the extent Gibbons's directive to Plaintiff to stand against a wall qualifies as a use of force, the force used was *de minimis. See Taylor*, 2012 WL 2469856, at *5 (finding a *de minimis* use of force where no evidence showed any injury or lasting pain resulting from a correction officer's alleged slamming of plaintiff's head against a wall, where plaintiff experienced only "slight pain" from being dragged out of the area, and where the physician prescribed him

Motrin, recommended bed rest, and continued his wearing of a medical boot in the days following the incident); s*ee also Ruggiero v. Fischer*, 2018 U.S. Dist. LEXIS 168297, *19 (S.D.N.Y. 2018) ("Numerous courts have rejecting Eighth Amendment claims where *de minimis* force was employed." (collecting cases)). Even taking as true that the events unfolded exactly as Plaintiff testified, nothing about Gibbons's conduct in these circumstances is "*repugnant* to the conscience of mankind" or rises to the dignity of an Eighth Amendment violation. *See Rivera v. Connolly*, No. 18-CV-03958, 2022 WL 1785313, at *6 (S.D.N.Y. June 1, 2022) (finding the defendant's conduct was not "repugnant to the conscience of mankind" where defendant shoved plaintiff twice to keep him from exiting the bathroom and plaintiff fell, striking his back on a divider between stalls); *see also Taylor*, 2012 WL 2469856, at *5 ("A correction officer's forcing an inmate's face into a prison wall, though clearly unpleasant to endure, would not appear 'repugnant to the conscience of mankind.'"). No reasonable jury could conclude that Gibbons's order to Plaintiff to stand against the wall, even in the context of a preexisting ankle injury, was so serious that it qualified as a violation of the Eighth Amendment.

In any event, Plaintiff has failed to establish the subjective prong. The inquiry is "'whether force was applied in a good-faith effort to maintain or restore discipline,' or rather 'maliciously and sadistically to cause harm.'" *Seweid v. Cnty. of Nassau*, No. 21-CV-03712, 2024 WL 693981, at *8 (E.D.N.Y. Feb. 20, 2024) (citing *Wilkins*, 559 U.S. at 37). Here, there is no dispute that DOCCS regulations permit incarcerated individuals only a single mattress. As discussed *supra*, Plaintiff did not have a permit for a second mattress at the time of the incident. Accordingly, Gibbons's conduct in ordering Plaintiff out of the bed to stand outside of his cell while she removed the second mattress furthered a legitimate penological interest of removing contraband. *See Rivera*, 2022 WL 1785313, at *6 ("Shoving an uncooperative inmate twice to ensure compliance with a

directive to wait is proportionate to a correction officer's legitimate penological interest of maintaining control."). Plaintiff's conclusory contentions that Gibbons was acting "maliciously and sadistically to hurt [him]" and "intended to harm [him]" do not negate the existence of this interest. (Pl. Br. at 10-11).

Plaintiff has failed to establish that he was subjected to excessive force and, accordingly, summary judgment in favor of Gibbons dismissing the excessive force claim is warranted. [6]

## CONCLUSION

For the foregoing reasons, Defendant Gibbons's partial motion for summary judgment is GRANTED.

Plaintiff's claim for excessive force is dismissed. Plaintiff's remaining claims will proceed to trial. The parties shall, by December 6, 2024, file those materials required by Rules 6(A) and 6(B) of this Court's Individual Practices.

The Clerk of Court is respectfully requested to terminate the pending motion sequence (Doc. 91), terminate Gibbons as a Defendant in this action, and mail a copy of this Opinion and Order to Plaintiff.

SO ORDERED.

Dated:  White Plains, New York
         November 6, 2024

_____
Philip M. Halpern
United States District Judge

---

[6] Given the conclusions reached herein, the Court need not and does not reach Gibbons's arguments regarding Eleventh Amendment and qualified immunity. (Def. Br. at 12-13).